IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIAM BELL III,

        Plaintiff,                      No. 2:11-cv-1864 MCE AC PS

    vs.

UNIV. OF CAL. DAVIS MED. CTR., *et al.*,

        Defendants.             FINDINGS & RECOMMENDATIONS

         On May 1, 2013, the court held a hearing on defendants' January 29, 2013 motion to dismiss. Plaintiff William Bell appeared in pro per. David Burkett appeared for the moving defendants, Teresa Meagher and the Regents of the University of California ("the Regents") (sued as the University of California, Davis Medical Center ("UCDMC")). On review of the motion, the documents filed in support and opposition, upon hearing the arguments of plaintiff and counsel, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

         Plaintiff is an African-American man in his 40s who began working for Meagher at UCDMC in Rancho Cordova in May 2006 as a Diagnostic Radiology Technologist. Plaintiff

1  claims that he suffers from a "type II serious medical condition"¹ and clinical depression.  This
2  medical condition caused rapid weight loss and abdominal irritation.
3      On June 23, 2009, plaintiff requested medical leave due to illness from Meagher.
4  Second Amended Complaint ("SAC") at 9, ¶ 23.  Plaintiff was granted leave.  Id. at 6, ¶ 10.
5      On June 26, 2009, plaintiff sent a medical certificate issued by his treating
6  physician to the UCDMC Human Resources department "indicating that plaintiff was unable to
7  return to work due to a serious medical condition and that follow up care was necessary."  SAC
8  at 7, ¶ 11; 18, ¶ 54.  Plaintiff claims his disability prevented him from "perform[ing] the essential
9  functions of his position and other normal daily activities, such as cooking, cleaning or driving[.
10 T]his incapacity lasted until September 23rd, 2009."  Id. at 8-9, ¶ 19.
11     On July 17, 2009, plaintiff again requested medical leave by informing Meagher
12 that he would be unable to work due to his health condition.  SAC at 10, ¶ 25.  Plaintiff does not
13 state whether he was in fact granted leave.
14     On July 29, 2009, plaintiff claims that his "termination" was "approved" for
15 unsatisfactory performance.  See SAC at 19, ¶ 56; 20, ¶ 58.  He does not specify whether he was
16 actually terminated and if so, on that date or at a later date.
17     Also on July 29, 2009, plaintiff submitted a Charge of Discrimination with the
18 EEOC on grounds of disability and retaliation.  Second Amended Compl. ("SAC") at 27.  The
19 EEOC complaint is reproduced here in its entirety:

> I was hired by Respondent in May, 2006.  My position Diagnostic
> Radiology Technician.  My immediate supervisor is Tina Meagher,
> Manager.  For the past two years, I have been subjected to ongoing
> harassment regarding my disability, denied a reasonable
> accommodation, and denied equal terms and conditions of
> employment.  For example, Managers and employees have
> continuously made jokes about my health.  I have also been
> unjustly disciplined due to my disability.  On June 23, 2009, I was
> place[d] on a two-week leave of absence and I complained t[o] my

---

¹ Plaintiff never specifically identifies this medical condition in the SAC.  However, at the hearing on defendants' motion, plaintiff identified this condition as anemia.

2

> Manager about my treatment.  On June 26, 2009, I provided Respondent's Human Resource Department with medical documentation of my disability and my restrictions.  When I attempted to return to work, I was not permitted to do so. To date, I have not been permitted to work. No remedial action was taken in response to my complaints.
>
> Respondent's stated reason for not allowing me to return to work is that I should await a letter from Respondent.  However, although I have not received a letter, the union has informed me that Respondent has issued a Letter of Intent to Terminate me.
>
> I believe I have been discriminated against because of my disability, in retaliation for my participation in protected activities, in violation of the Americans with Disabilities Act of 1990, as amended.

On August 5, 2009, after his termination was "approved" and after he filed his EEOC charge, plaintiff met with Meagher and others at UCDMC to discuss his medical condition and his need for accommodations.  SAC at 19, ¶ 55.  At this meeting, he was informed by Meagher and the others that "that was not why we were there."  Id.  Plaintiff provides no other details regarding this meeting.

Plaintiff initiated this action on April 1, 2011 and is proceeding on the SAC filed April 30, 2012.  See ECF No. 18.  As screened, plaintiff brings the following claims against the Regents: (1) violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12900 *et seq.*; (2) violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*; (3) intentional infliction of emotional distress; and (4) wrongful termination.  Plaintiff also brings the following claim against both Meagher and the Regents: (5) violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*  See ECF No. 21 at 3.

On January 29, 2013, the Regents and Meagher filed a motion to dismiss, which plaintiff opposes.  In his opposition, plaintiff addresses only defendants' motion as related to his Title VII sex and race discrimination claims.

3

LEGAL STANDARDS

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint. N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, a defendant's Rule 12(b)(6) motion challenges the court's ability to grant any relief on the plaintiff's claims, even if the plaintiff's allegations are true.

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989).

DISCUSSION

Defendants seek dismissal of plaintiff's Title VII claims for race or sex discrimination for failure to exhaust administrative remedies and for failure to state a claim. Defendants also seek dismissal of the ADA and FEHA claims as deficient because plaintiff has not alleged that he is a qualifying individual with a disability. As to plaintiff's common law claims of wrongful termination and intentional infliction of emotional distress, defendants argue that plaintiff may not maintain those claims under California law against public entities. And finally, defendants seek dismissal of plaintiff's FMLA claim pursuant to the doctrine of sovereign immunity and because plaintiff alleges he was actually given leave.

A. <u>ADA Claim</u> (against the Regents)

Plaintiff brings suit against the Regents for violating the ADA by discriminating against him due to disability, failing to engage in the interactive process, and failing to provide a reasonable accommodation.

1. Disability

Employees may invoke the protections of the ADA against discrimination by their employer in "hiring, advancement, or discharge," among other areas. See 42 U.S.C. § 12112(a). To state a prima facie case of employment discrimination under the ADA, a plaintiff must allege that: (1) she is "disabled" pursuant to the ADA; (2) she is a qualified individual, able to perform the essential functions of the job, with or without reasonable accommodation; and (3) she suffered an adverse employment action because of her disability. See Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1090 (9th Cir. 2002); Nunes v. Wal-Mart Stores, Inc., 164 F.3d 1243, 1246 (9th Cir. 1999); see also 42 U.S.C. § 12111(8)-(9) (defining "qualified individual" and "reasonable accommodation").

Initially, the court agrees with defendants that plaintiff has not sufficiently alleged that he had a disability. Not all individuals having what might commonly be perceived as physical or mental disabilities are protected by the ADA. Merely having an impairment does not make one disabled for purposes of the ADA. See Brody v. ITT Educational Services, Inc., 2011 WL 1239903, at *3-4 (D. Nev. 2011). "The ADA defines 'disability' with specificity as a term of art. Hence, a person may be 'disabled' in the ordinary usage sense, or even for purposes of receiving disability benefits from the government, yet still not be 'disabled' under the ADA." Sanders v. Arneson Prods., Inc., 91 F.3d 1351, 1354 n.2 (9th Cir. 1996) (temporary psychological impairment that lasted less than four months not a disability under the ADA).

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Plaintiff's claim is based on the first prong of this definition (actual disability).

Courts follow a three-step analysis in determining whether a plaintiff is "actually disabled" under the ADA's definition of disability. Bragdon v. Abbott, 524 U.S. 624, 631 (1998). First, the court must ascertain whether a plaintiff has a "physical or mental impairment"

as defined by the ADA. Id. Second, the court must identify the life activity upon which plaintiff relies (walking, seeing, hearing, etc.) and determine whether it constitutes a major life activity under the ADA. Id. Third, the court must decide whether a plaintiff's impairment "substantially limits" his ability to perform the identified major life activity. Id. at 631, 639; Gribben v. United Parcel Service, Inc., 528 F.3d 1166, 1169 (9th Cir. 2008).

Here, plaintiff alleges that he has a "type II serious medical condition . . . that is found in people with certain long-term chronic medical conditions." SAC at 5, ¶ 7. While the court presumes, based on vague statements in the SAC, that plaintiff suffers from anemia, it is plaintiff's responsibility to allege his disability with specificity. Without this information, the court cannot make a determination as to whether plaintiff is disabled pursuant to the ADA.

2.   Qualified Individual

The court also finds that plaintiff has not shown that he is a qualified individual under the ADA. A "qualified individual" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Bates v. United Parcel Service, Inc., 511 F.3d 974, 989 (9th Cir. 2007) (citing 42 U.S.C. § 12111(8)). "'Essential functions' are 'fundamental job duties of the employment position . . . not includ[ing] the marginal functions of the position.'" Id. (quoting 29 C.F.R. § 1630.2(n)(1) and citing Cripe v. City of San Jose, 261 F.3d 877, 887 (9th Cir. 2001)). "If a disabled person cannot perform a job's 'essential functions' (even with a reasonable accommodation), then the ADA's employment protections do not apply." Id. (citing Cripe, 261 F.3d at 884-85). "'If, on the other hand, a person can perform a job's essential functions, and therefore is a qualified individual, then the ADA prohibits discrimination' with respect to the employment actions outlined in 42 U.S.C. § 12112(a)." Id.

In the SAC, plaintiff concedes that "he was unable to perform the essential functions of his position and other normal daily activities . . . ." SAC at 5, ¶ 8; 8, ¶ 19. Plaintiff claims this inability to perform the essential functions of the employment position continued

6

until September 23, 2009. Id. at 8-9, ¶ 19. Thus, based on plaintiff's own verified statements, the court concludes that plaintiff was not a qualified individual under the ADA because he was unable to perform the essential functions of his employment position before his July 29, 2009 termination date. See McCarthy v. R.J. Reynolds Tobacco Co., 819 F. Supp. 2d 923, 936 (E.D. Cal. 2011).

        3.      <u>Failure to Engage in Interactive Process and/or Provide Reasonable Accommodation</u>

In his opposition to defendants' motion to dismiss, and in contradiction to his own verified statements in the SAC, plaintiff claims that his treating physician "approved Bell as medically qualified to continue in his capacity at the University of California Davis Medical Center while seeking continued medical care."[2] Opp'n at 7. Yet even assuming that plaintiff was a qualified individual under the ADA, his claim that the Regents failed to engage in the interactive process and failed to provide a reasonable accommodation must be dismissed.

Employers are required to engage in an interactive process with employees to identify and implement appropriate reasonable accommodations; this interactive process is triggered by a request for accommodation or an employer's recognition of the need for accommodation. See Barnett v. U.S. Air, Inc., 228 F.3d 1105, 1112 (9th Cir. 2000) (en banc) (vacated on other grounds by 535 U.S. 391 (2002)).

The standard for determining whether an employer has been put on notice that an employee is seeking a reasonable accommodation for the employee's limitations is low: an employee need only "inform the employer of a need for an adjustment due to a medical condition using plain English and need not mention the ADA or use the phrase reasonable accommodation." Barnett, 228 F.3d at 1112 (internal quotation marks omitted). Although an employee is not required to use any particular language, the employer's duty is not triggered

---

[2] In support, plaintiff cites to numerous exhibits that were neither attached to his pleading nor his motion to dismiss. In fact, they are nowhere in the record in this case.

7

unless the employee or his or her representative "provides the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 313 (3d Cir. 1999); see also Summers v. A. Teichert & Son, 127 F.3d 1150, 1153 (9th Cir. 1997) (holding no triable issue of fact existed where employee had not asked for accommodation). The employee's request for an accommodation has been viewed as the predicate requirement that triggers the interactive process. Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1045 (8th Cir. 2005) (citation and internal quotation omitted). Merely asserting that an accommodation was needed is insufficient; "the employee must inform the employer of the accommodation needed." Id. (citing Mole v. Buckhorn Rubber Products, Inc., 165 F.3d 1212, 1217 (8th Cir. 1999)). The Eighth Circuit in Mole recognized that generally, it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed. Mole, 165 F.3d at 1217 (citations omitted).

In this case, plaintiff's claims that the Regents failed to engage in the interactive process and failed to provide a reasonable accommodation must be dismissed because plaintiff never alleges that he asked for a reasonable accommodation prior to his termination, which the court presumes occurred on or about July 29, 2009. There is simply no requirement that an employer provide a reasonable accommodation to an employee when both the employee and the employee's treating physician claim that the employee cannot work at all. Additionally, there is no ADA claim for failure to participate in the interactive process when an employee was terminated before submitting a request for reasonable accommodation. See Wells v. Mutual of Enumclaw, 2005 WL 2035066 (D. Idaho 2005) ("Having found Plaintiff failed to request accommodation until after his termination, the employer could not have terminated Wells to avoid participating in the interactive process of accommodation. Plaintiff has not shown that requesting accommodation after termination, creates a duty on the employer to reasonably

////

1 accommodate or supports a finding the termination in this case was in violation of the ADA . . . .").

Accordingly, plaintiff's ADA claim must be dismissed with leave to amend.

B. <u>FEHA Claim</u> (against the Regents)

Plaintiff's FEHA claim mirrors his ADA claim. Pursuant to California Government Code section 12940(m), it is unlawful, and separately actionable under FEHA, for an employer to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee, unless the accommodation would cause undue hardship to the employer. <u>Raine v. City of Burbank</u>, 135 Cal. App. 4th 1215, 1222-23 (2006) (citing Cal. Govt. Code § 12940(m)); <u>see also</u> <u>King v. United Parcel Service, Inc.</u>, 152 Cal. App. 4th at 443. "[T]he position for which an accommodation is required is the employment position the [disabled individual] holds or desires." <u>Hastings v. Department of Corrections</u>, 110 Cal. App. 4th 963, 972 (2003). The employee has "the burden of giving the employer notice of the disability." <u>Raine</u>, 135 Cal. App. 4th at 1222.

Once notice is given, the employer must take affirmative steps and the parties must engage in an interactive process in order to attempt to fashion a reasonable accommodation. <u>See</u> <u>King</u>, 152 Cal. App. 4th at 443; <u>Gelfo v. Lockheed Martin Corp.</u>, 140 Cal. App. 4th 34, 54 (2006); <u>Raine</u>, 135 Cal. App. 4th at 1222. An employer is only required to make a "reasonable accommodation," it is not required "to choose the best accommodation or the specific accommodation a disabled employee or applicant seeks." <u>Raine</u>, 135 Cal. App. 4th at 1222; <u>Hanson v. Lucky Stores, Inc.</u>, 74 Cal. App. 4th 215, 228 (1999).

Plaintiff's FEHA claim fails for the same reasons that his ADA claims fail.

C. <u>Title VII Claim</u> (against the Regents)

    1. <u>Race & Sex Discrimination</u>

Plaintiff presents claims for race and sex discrimination in violation of Title VII. Plaintiff's race discrimination claim is based on allegations that plaintiff, who was hired to

9

1  replace a white male with ailments similar to plaintiff's, was discriminated against whereas the
2  white male was not. Plaintiff's sex discrimination claim is vague and not specifically
3  enumerated. Nonetheless, it appears that plaintiff is accusing various employees of UCDMC of
4  sexually harassing plaintiff in order to have him fired. See, e.g., SAC at 14, ¶ 43.

5  Generally, exhaustion of administrative remedies is required in order to establish
6  federal subject matter jurisdiction over a Title VII claim. B.K.B. v. Maui Police Dep't, 276 F.3d
7  1091, 1099 (9th Cir. 2002). Under Title VII, a plaintiff must exhaust her or his administrative
8  remedies by filing a timely charge with the EEOC, or the appropriate state agency. See 42
9  U.S.C. § 2000e–5(b). This serves the important purposes of giving the charged party notice of
10 the claim, affording the agency an opportunity to investigate the charge, and narrowing the
11 issues for prompt adjudication and decision. Id.

12 Following exhaustion, a federal court's subject matter jurisdiction over Title VII
13 claims "depends upon the scope of the both the EEOC charge and the EEOC investigation."
14 Sosa v. Hiraoka, 920 F.2d 1451, 1456 (9th Cir. 1990). "Subject matter jurisdiction extends over
15 all allegations of discrimination that either fell within the scope of the EEOC's actual
16 investigation or an EEOC investigation which can reasonably be expected to grow out of the
17 charge of discrimination." B.K.B., 276 F.3d at 1100 (internal quotation marks and citation
18 omitted). The court construes the language of EEOC charges "'with utmost liberality since they
19 are made by those unschooled in the technicalities of formal pleading.'" Id. (citation omitted).
20 Nonetheless, allegations of discrimination are within the court's jurisdiction only if the claims
21 are "like or reasonably related to" the factual allegations contained in the EEOC charge. Id.

22 The court has examined the EEOC charges and finds no mention of race or sex
23 discrimination, and further finds no factual allegations that are "like or reasonably related to"
24 plaintiff's claim. Thus, even construing the EEOC charge "with utmost liberality," the court
25 finds that plaintiff has failed to sufficiently allege race or sex discrimination and, as such, he
26 failed to exhaust his administrative remedies as to these claims. In his opposition, plaintiff states

that the EEOC delayed in responding to his claim. That, however, does not affect the claim itself, which forms the basis of this action and which failed to allege any race or sex discrimination. Plaintiff's Title VII sex and race discrimination claims must therefore be dismissed with prejudice. Because the court finds dismissal warranted on this ground, the court declines to address the merits of defendants' argument that plaintiff failed to allege sufficient facts to support his claims of race and sex discrimination.

### 2. Hostile Work Environment

To the extent plaintiff brings suit for hostile work environment due to his race or sex, these claims must be dismissed for the reasons stated. Insofar as plaintiff argues that he suffered a hostile work environment because of his disability, "Title VII protects persons on the basis of 'race, color, religion, sex, or national origin,' it does not protect persons on the basis of disability." Dotson v. County of Kern, 2011 WL 902142, at *6 (E.D. Cal. Mar. 15, 2011) (citing 42 U.S.C. §§ 2000e–2(a)(1), (m); see also Williams v. Holiday Inn, 1996 WL 162992, at *2 (N.D. Cal. 1996). These claims should also be dismissed with prejudice.

### 3. Age Discrimination

Plaintiff also alleges age discrimination under Title VII. But just like disability, "age . . . is not actionable under Title VII." Lelaind v. City & County of San Francisco, 576 F. Supp. 2d 1079, 1089 (N.D. Cal. 2008). In fact, "Congress rejected proposals to address age discrimination in the Civil Rights Act of 1964." Smith v. City of Jackson, 544 U.S. 228, 253 (2005). Instead, the Age Discrimination in Employment Act (the "ADEA") "is the exclusive remedy for age discrimination claims." Nnachi v. City & County of San Francisco, 2010 WL 3398545, at *6 (N.D. Cal. Aug.27, 2010); see also Ahlmeyer v. Nevada Sys. of Higher Educ., 555 F.3d 1051, 1057 n.5 (9th Cir. 2009) ("Every circuit to consider the issue has concluded similarly that the ADEA is the exclusive remedy for age discrimination claims by federal employees.").

Here, plaintiff has pled age discrimination only under Title VII. He has not pled a


claim under the ADEA. Therefore, his Title VII age discrimination claim should be dismissed. Moreover, there are no factual allegations in the SAC supporting any age discrimination claim.

Accordingly, this claim should be dismissed without leave to amend.

D.   Common Law Claims (against the Regents)

The Regents next seek dismissal of plaintiff's common law claims on the ground that plaintiff is barred from bringing such claims pursuant to California Government Code § 815, which provides as follows:

> Except as otherwise provided by statute: (a) A public entity is not liable for any injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.

Cal. Gov. Code § 815(a).

The Regents is a public entity pursuant to Cal. Gov. Code § 811.2 (providing that "'Public entity' includes the State, [and] the Regents of the University of California"). As such, the Regents argue that it is immune from liability arising out of common law tort claims under California Government Code § 815.

1.   Wrongful Termination

Section 815 applies to claims for wrongful termination in violation of public policy because the claim is considered a common law tort under California law. See Palmer v. Regents of the Univ. of Cal., 107 Cal. App. 4th 899, 911-12 (2003) (holding that claim for wrongful termination in violation of public policy against the University of California was barred under § 815(a) because the University is a public entity). Accordingly, plaintiff's wrongful termination claim is barred by § 815(a).

Additionally, Cal. Gov't Code § 815.2(a) provides that:

> [a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

12

1  This provision does not apply to plaintiff's wrongful termination claim against the Regents
2  because, under California law, individual employees may not be sued for wrongful discharge in
3  violation of public policy.  See Khajavi v. Feather River Anesthesia Med. Group, 84 Cal. App.
4  4th 32, 53 (2003) ("As a matter of law, only an employer can be liable for the tort of wrongful
5  termination in violation of public policy."); Phillips v. Gemini Moving Specialists, 63 Cal. App.
6  4th 563, 576-77 (1998) (reviewing relevant cases and concluding that plaintiff may not sue his
7  employer's paymaster for wrongful discharge, because the tort of wrongful discharge "has its
8  basis in the employer-employee relationship and [the paymaster] was not plaintiff's employer);
9  Jacobs v. Universal Dev. Corp., 53 Cal. App. 4th 692, 704 (1997) ("Only an employer can be
10  liable for tortious discharge, and fellow employees cannot be held accountable for tortious
11  discharge on a conspiracy theory.").

12  Plaintiff's wrongful termination claim accordingly must be dismissed with
13  prejudice.

14  2. <u>Intentional Infliction of Emotional Distress</u>

15  The basis of plaintiff's claim for intentional infliction of emotional distress
16  ("IIED") is unclear.  Based on the heading of this cause of action, plaintiff appears to bring suit
17  against the Regents for "failure to prevent harassment or discrimination."  See SAC at 20.  This
18  sounds in negligence.  To the extent then that plaintiff is asserting a direct negligence action
19  against the Regents, this claim fails.  See Large v. Regents of University of California, 2012 WL
20  3647455, at *8 n.2 (E.D. Cal. 2012); Cardinal v. Buchnoff, 2010 WL 3609489, at *1-2 (S.D. Cal.
21  2010).

22  However, in the body of this cause of action, plaintiff seeks redress for the
23  allegedly harassing behavior of Meagher and others.  Unlike plaintiff's wrongful termination
24  claim, plaintiff's indirect claim of IIED is not barred by California Government Code § 815
25  because that claim *can* be brought against individual employees.  See Large, supra, at *8
26  (allowing IIED claim against Regents to proceed based on conduct of employee acting in the

13

course and scope of his employment). Furthermore, the Regents have not shown that their employees would be immune from this cause of action. See Cal. Gov. Code § 815.2(b)[3]; Robinson v. Solano County, 278 F.3d 1007, 1016 (9th Cir. 2002) (noting that in government tort cases, the rule is liability, immunity is the exception).

Because the Regents did not demonstrate that its employees alleged to have engaged in the acts giving rise to this action are immune from liability as a matter of law, plaintiff's IIED claim is not subject to dismissal on this ground.

E.  FMLA Claim (against the Regents and Meagher)

Finally, defendants seek dismissal of the FMLA claim on grounds of sovereign immunity and failure to state a claim.

The FMLA guarantees eligible employees twelve weeks of leave in a one-year period following certain events: a disabling health problem, a family member's serious illness, or the arrival of a new child. Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 86 (2002) (citing 29 U.S.C. § 2612(a)(1)). Leave must be granted when medically necessary on an intermittent or part-time basis. Id. (citing § 2612(b)(1)). Upon the employee's timely return, the employer must reinstate the employee to his or her former position or an equivalent. Id. (citing § 2614(a)(1)).

To prevail under the FMLA, an employee must prove, as a threshold matter, that the employer interfered with, restrained, or denied "the [employee's] exercise of (or attempts to exercise) any rights provided by the Act." 29 C.F.R. § 825.220(a)(1); see also Ragsdale, 535 U.S. at 89. Even then, the FMLA provides no relief unless the employee has been prejudiced by the violation: the employer is liable only for compensation and benefits lost "by reason of the violation," § 2617(a)(1)(A)(i)(I), for other monetary losses sustained "as a direct result of the

---

[3] This section provides, "Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

14

violation," § 2617(a)(1)(A)(i)(II), and for "appropriate" equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1) (B). Ragsdale, 535 U.S. at 89.

1. Sovereign Immunity

Defendants first seek dismissal of plaintiff's FMLA claim on grounds of sovereign immunity.

"A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense." Coleman v. Court of Appeals of Maryland, __ U.S. __, 132 S. Ct. 1327, 1333 (2012) (citing Kimel v. Florida Bd. of Regents, 528 U.S. 62, 72-73 (2000)). Section Five of the Fourteenth Amendment of the United States Constitution provides an exception that allows Congress to abrogate a State's immunity to enforce the provisions of the Amendment. See, e.g., Fitzpatrick v. Bitzer, 427 U.S. 445 (1976).

As noted, the FMLA provides, in pertinent part, that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(1). This provision is known as the "self-care provision." It creates a private right of action for equitable relief and damages "against any employer (including a public agency) in any Federal or State court" for violations of the self-care provision, amongst others. See 29 U.S.C. § 2617(a)(2). As used in that statute, a public agency includes "the government of a State or political subdivision of a State; or an agency of the United States, a State, or a political subdivision of a State." 29 C.F.R. § 825.108.

The United States Supreme Court recently ruled that the FMLA's self-care provision did not fall within the Fourteenth Amendment exception to Eleventh Amendment immunity. Coleman, 132 S. Ct. at 1337 ("To abrogate the States' immunity from suits for damages under § 5, Congress must identify a pattern of constitutional violations and tailor a remedy congruent and proportional to the documented violations. It failed to do so when it allowed employees to sue States for violations of the FMLA's self-care provision."). As such,

15

states are immune from suit under the self-care provision of the FMLA.

Further, Eleventh Amendment immunity extends to agencies of the state. Mitchell v. Los Angeles Cmty. Coll. Dist., 861 F.2d 198, 201 (9th Cir. 1988). The Regents is entitled to Eleventh Amendment immunity because a California college district is considered a state agency. See id. Accordingly, plaintiff's FMLA claim against the Regents must be dismissed without leave to amend.

Defendants also argue that Meagher is able to claim sovereign immunity because "there is no question that [the Regents] is the real party in interest to the FMLA claim." Defs.' Mot. to Dismiss at 10; Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 101-02 (1984). Contrary to defendants' assertion, it is unclear who the real party in interest is in an FMLA claim. As this court has recognized, there is a split in authority on the question of an individual public employee's FMLA liability. See Bonzani v. Shinseki, 895 F. Supp. 2d 1003, 1007 (E.D. Cal. 2012) (collecting cases).

Therefore, plaintiff's FMLA claim against Meagher is not subject to dismissal on this ground.

    2. <u>Failure to State a Claim</u>

Notwithstanding the foregoing, the court finds that plaintiff's FMLA claim is subject to dismissal for failure to state a claim. Simply put, plaintiff FMLA allegations are unclear. Liability under the FMLA is predicated on an alleged denial of medical leave, but plaintiff admits in the SAC that he was granted a two-week leave of absence on June 23, 2009, and that he requested a second leave of absence on July 17, 2009. The motion should therefore be granted. At the hearing on defendants' motion, plaintiff stated he was denied medical leave following his second request. Thus, this claim should be dismissed with leave to amend.

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss be granted;

2. The following claims be dismissed without leave to amend: Title VII, wrongful

termination, FMLA as to the Regents; and

3. Plaintiff be granted leave to amend the remaining claims.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 6, 2013.

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

/mb;bell1864.mtd