1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                  FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10

11   WILLIAM BELL III,

12              Plaintiff,                    No. 2:11-cv-1864 MCE AC PS

13        vs.

14   UNIV. OF CAL. DAVIS MED. CTR.,
     *et al.*,

15              Defendants.                   FINDINGS & RECOMMENDATIONS

16   _____/

17              On May 1, 2013, the court held a hearing on defendants' January 29, 2013 motion

18   to dismiss.  Plaintiff William Bell appeared in pro per.  David Burkett appeared for the moving

19   defendants, Teresa Meagher and the Regents of the University of California ("the Regents")

20   (sued as the University of California, Davis Medical Center ("UCDMC")).  On review of the

21   motion, the documents filed in support and opposition, upon hearing the arguments of plaintiff

22   and counsel, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

23                    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

24              Plaintiff is an African-American man in his 40s who began working for Meagher

25   at UCDMC in Rancho Cordova in May 2006 as a Diagnostic Radiology Technologist.  Plaintiff

26

1    claims that he suffers from a "type II serious medical condition"[1] and clinical depression.  This

2    medical condition caused rapid weight loss and abdominal irritation.

3            On June 23, 2009, plaintiff requested medical leave due to illness from Meagher.

4    Second Amended Complaint ("SAC") at 9, ¶ 23.  Plaintiff was granted leave.  Id. at 6, ¶ 10.

5            On June 26, 2009, plaintiff sent a medical certificate issued by his treating

6    physician to the UCDMC Human Resources department "indicating that plaintiff was unable to

7    return to work due to a serious medical condition and that follow up care was necessary."  SAC

8    at 7, ¶ 11; 18, ¶ 54.  Plaintiff claims his disability prevented him from "perform[ing] the essential

9    functions of his position and other normal daily activities, such as cooking, cleaning or driving[.

10   T]his incapacity lasted until September 23rd, 2009."  Id. at 8-9, ¶ 19.

11           On July 17, 2009, plaintiff again requested medical leave by informing Meagher

12   that he would be unable to work due to his health condition.  SAC at 10, ¶ 25.  Plaintiff does not

13   state whether he was in fact granted leave.

14           On July 29, 2009, plaintiff claims that his "termination" was "approved" for

15   unsatisfactory performance.  See SAC at 19, ¶ 56; 20, ¶ 58.  He does not specify whether he was

16   actually terminated and if so, on that date or at a later date.

17           Also on July 29, 2009, plaintiff submitted a Charge of Discrimination with the

18   EEOC on grounds of disability and retaliation.  Second Amended Compl. ("SAC") at 27.  The

19   EEOC complaint is reproduced here in its entirety:

20           I was hired by Respondent in May, 2006.  My position Diagnostic
             Radiology Technician.  My immediate supervisor is Tina Meagher,
21           Manager.  For the past two years, I have been subjected to ongoing
             harassment regarding my disability, denied a reasonable
22           accommodation, and denied equal terms and conditions of
             employment.  For example, Managers and employees have
23           continuously made jokes about my health.  I have also been
             unjustly disciplined due to my disability.  On June 23, 2009, I was
24           place[d] on a two-week leave of absence and I complained t[o] my

25   _____

26       [1]  Plaintiff never specifically identifies this medical condition in the SAC.  However, at
     the hearing on defendants' motion, plaintiff identified this condition as anemia.

                                                        2

Manager about my treatment.  On June 26, 2009, I provided Respondent's Human Resource Department with medical documentation of my disability and my restrictions.  When I attempted to return to work, I was not permitted to do so. To date, I have not been permitted to work. No remedial action was taken in response to my complaints.

Respondent's stated reason for not allowing me to return to work is that I should await a letter from Respondent.  However, although I have not received a letter, the union has informed me that Respondent has issued a Letter of Intent to Terminate me.

I believe I have been discriminated against because of my disability, in retaliation for my participation in protected activities, in violation of the Americans with Disabilities Act of 1990, as amended.

On August 5, 2009, after his termination was "approved" and after he filed his EEOC charge, plaintiff met with Meagher and others at UCDMC to discuss his medical condition and his need for accommodations.  SAC at 19, ¶ 55.  At this meeting, he was informed by Meagher and the others that "that was not why we were there."  Id.  Plaintiff provides no other details regarding this meeting.

Plaintiff initiated this action on April 1, 2011 and is proceeding on the SAC filed April 30, 2012.  See ECF No. 18.  As screened, plaintiff brings the following claims against the Regents: (1) violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12900 *et seq.*; (2) violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*; (3) intentional infliction of emotional distress; and (4) wrongful termination.  Plaintiff also brings the following claim against both Meagher and the Regents: (5) violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*  See ECF No. 21 at 3.

On January 29, 2013, the Regents and Meagher filed a motion to dismiss, which plaintiff opposes.  In his opposition, plaintiff addresses only defendants' motion as related to his Title VII sex and race discrimination claims.

3

LEGAL STANDARDS

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint.  N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Thus, a defendant's Rule 12(b)(6) motion challenges the court's ability to grant any relief on the plaintiff's claims, even if the plaintiff's allegations are true.

In determining whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989).

DISCUSSION

Defendants seek dismissal of plaintiff's Title VII claims for race or sex discrimination for failure to exhaust administrative remedies and for failure to state a claim. Defendants also seek dismissal of the ADA and FEHA claims as deficient because plaintiff has not alleged that he is a qualifying individual with a disability.  As to plaintiff's common law claims of wrongful termination and intentional infliction of emotional distress, defendants argue that plaintiff may not maintain those claims under California law against public entities.  And finally, defendants seek dismissal of plaintiff's FMLA claim pursuant to the doctrine of sovereign immunity and because plaintiff alleges he was actually given leave.

A.     ADA Claim (against the Regents)

Plaintiff brings suit against the Regents for violating the ADA by discriminating against him due to disability, failing to engage in the interactive process, and failing to provide a reasonable accommodation.

4

1        1.      Disability

2        Employees may invoke the protections of the ADA against discrimination by their

3    employer in "hiring, advancement, or discharge," among other areas.  See 42 U.S.C. § 12112(a).

4    To state a prima facie case of employment discrimination under the ADA, a plaintiff must allege

5    that: (1) she is "disabled" pursuant to the ADA; (2) she is a qualified individual, able to perform

6    the essential functions of the job, with or without reasonable accommodation; and (3) she

7    suffered an adverse employment action because of her disability.  See Zivkovic v. S. Cal. Edison

8    Co., 302 F.3d 1080, 1090 (9th Cir. 2002); Nunes v. Wal-Mart Stores, Inc., 164 F.3d 1243, 1246

9    (9th Cir. 1999); see also 42 U.S.C. § 12111(8)-(9) (defining "qualified individual" and

10   "reasonable accommodation").

11       Initially, the court agrees with defendants that plaintiff has not sufficiently alleged

12   that he had a disability.  Not all individuals having what might commonly be perceived as

13   physical or mental disabilities are protected by the ADA.  Merely having an impairment does not

14   make one disabled for purposes of the ADA.  See Brody v. ITT Educational Services, Inc., 2011

15   WL 1239903, at *3-4 (D. Nev. 2011).  "The ADA defines 'disability' with specificity as a term

16   of art.  Hence, a person may be 'disabled' in the ordinary usage sense, or even for purposes of

17   receiving disability benefits from the government, yet still not be 'disabled' under the ADA."

18   Sanders v. Arneson Prods., Inc., 91 F.3d 1351, 1354 n.2 (9th Cir. 1996) (temporary

19   psychological impairment that lasted less than four months not a disability under the ADA).

20       The ADA defines "disability" as "(A) a physical or mental impairment that

21   substantially limits one or more of the major life activities of such individual; (B) a record of

22   such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C.

23   § 12102(2).  Plaintiff's claim is based on the first prong of this definition (actual disability).

24       Courts follow a three-step analysis in determining whether a plaintiff is "actually

25   disabled" under the ADA's definition of disability.  Bragdon v. Abbott, 524 U.S. 624, 631

26   (1998).  First, the court must ascertain whether a plaintiff has a "physical or mental impairment"

1    as defined by the ADA.  Id.  Second, the court must identify the life activity upon which plaintiff

2    relies (walking, seeing, hearing, etc.) and determine whether it constitutes a major life activity

3    under the ADA.  Id.  Third, the court must decide whether a plaintiff's impairment "substantially

4    limits" his ability to perform the identified major life activity.  Id. at 631, 639; Gribben v. United

5    Parcel Service, Inc., 528 F.3d 1166, 1169 (9th Cir. 2008).

6            Here, plaintiff alleges that he has a "type II serious medical condition . . . that is

7    found in people with certain long-term chronic medical conditions."  SAC at 5, ¶ 7.  While the

8    court presumes, based on vague statements in the SAC, that plaintiff suffers from anemia, it is

9    plaintiff's responsibility to allege his disability with specificity. Without this information, the

10   court cannot make a determination as to whether plaintiff is disabled pursuant to the ADA.

11           2.   Qualified Individual

12           The court also finds that plaintiff has not shown that he is a qualified individual

13   under the ADA.  A "qualified individual" is "an individual with a disability who, with or without

14   reasonable accommodation, can perform the essential functions of the employment position that

15   such individual holds or desires."  Bates v. United Parcel Service, Inc., 511 F.3d 974, 989 (9th

16   Cir. 2007) (citing 42 U.S.C. § 12111(8)).  "'Essential functions' are 'fundamental job duties of

17   the employment position . . . not includ[ing] the marginal functions of the position.'"  Id.

18   (quoting 29 C.F.R. § 1630.2(n)(1) and citing Cripe v. City of San Jose, 261 F.3d 877, 887 (9th

19   Cir. 2001)).  "If a disabled person cannot perform a job's 'essential functions' (even with a

20   reasonable accommodation), then the ADA's employment protections do not apply."  Id. (citing

21   Cripe, 261 F.3d at 884-85).  "'If, on the other hand, a person can perform a job's essential

22   functions, and therefore is a qualified individual, then the ADA prohibits discrimination' with

23   respect to the employment actions outlined in 42 U.S.C. § 12112(a)."  Id.

24           In the SAC, plaintiff concedes that "he was unable to perform the essential

25   functions of his position and other normal daily activities . . . ."  SAC at 5, ¶ 8; 8, ¶ 19.  Plaintiff

26   claims this inability to perform the essential functions of the employment position continued

6

1    until September 23, 2009.  <u>Id.</u> at 8-9, ¶ 19.  Thus, based on plaintiff's own verified statements,

2    the court concludes that plaintiff was not a qualified individual under the ADA because he was

3    unable to perform the essential functions of his employment position before his July 29, 2009

4    termination date.  <u>See</u> <u>McCarthy v. R.J. Reynolds Tobacco Co.</u>, 819 F. Supp. 2d 923, 936 (E.D.

5    Cal. 2011).

6          3.    <u>Failure to Engage in Interactive Process and/or Provide Reasonable</u>

7                <u>Accommodation</u>

8                In his opposition to defendants' motion to dismiss, and in contradiction to his own

9    verified statements in the SAC, plaintiff claims that his treating physician "approved Bell as

10   medically qualified to continue in his capacity at the University of California Davis Medical

11   Center while seeking continued medical care."[2]  Opp'n at 7.  Yet even assuming that plaintiff

12   was a qualified individual under the ADA, his claim that the Regents failed to engage in the

13   interactive process and failed to provide a reasonable accommodation must be dismissed.

14               Employers are required to engage in an interactive process with employees to

15   identify and implement appropriate reasonable accommodations; this interactive process is

16   triggered by a request for accommodation or an employer's recognition of the need for

17   accommodation.  <u>See</u> <u>Barnett v. U.S. Air, Inc.</u>, 228 F.3d 1105, 1112 (9th Cir. 2000) (en banc)

18   (vacated on other grounds by 535 U.S. 391 (2002)).

19               The standard for determining whether an employer has been put on notice that an

20   employee is seeking a reasonable accommodation for the employee's limitations is low: an

21   employee need only "inform the employer of a need for an adjustment due to a medical condition

22   using plain English and need not mention the ADA or use the phrase reasonable

23   accommodation."  <u>Barnett</u>, 228 F.3d at 1112 (internal quotation marks omitted).  Although an

24   employee is not required to use any particular language, the employer's duty is not triggered

25   ─────────────────

26         [2]  In support, plaintiff cites to numerous exhibits that were neither attached to his
     pleading nor his motion to dismiss.  In fact, they are nowhere in the record in this case.

7

1    unless the employee or his or her representative "provides the employer with enough information

2    that, under the circumstances, the employer can be fairly said to know of both the disability and

3    desire for an accommodation." <u>Taylor v. Phoenixville Sch. Dist.</u>, 184 F.3d 296, 313 (3d Cir.

4    1999); <u>see also</u> <u>Summers v. A. Teichert & Son</u>, 127 F.3d 1150, 1153 (9th Cir. 1997) (holding no

5    triable issue of fact existed where employee had not asked for accommodation).  The employee's

6    request for an accommodation has been viewed as the predicate requirement that triggers the

7    interactive process.  <u>Kratzer v. Rockwell Collins, Inc.</u>, 398 F.3d 1040, 1045 (8th Cir. 2005)

8    (citation and internal quotation omitted).  Merely asserting that an accommodation was needed is

9    insufficient; "the employee must inform the employer of the accommodation needed." <u>Id.</u> (citing

10    <u>Mole v. Buckhorn Rubber Products, Inc.</u>, 165 F.3d 1212, 1217 (8th Cir. 1999)).  The Eighth

11    Circuit in <u>Mole</u> recognized that generally, it is the responsibility of the individual with a

12    disability to inform the employer that an accommodation is needed.  <u>Mole</u>, 165 F.3d at 1217

13    (citations omitted).

14         In this case, plaintiff's claims that the Regents failed to engage in the interactive

15    process and failed to provide a reasonable accommodation must be dismissed because plaintiff

16    never alleges that he asked for a reasonable accommodation prior to his termination, which the

17    court presumes occurred on or about July 29, 2009.  There is simply no requirement that an

18    employer provide a reasonable accommodation to an employee when both the employee and the

19    employee's treating physician claim that the employee cannot work at all.  Additionally, there is

20    no ADA claim for failure to participate in the interactive process when an employee was

21    terminated before submitting a request for reasonable accommodation.  <u>See</u> <u>Wells v. Mutual of</u>

22    <u>Enumclaw</u>, 2005 WL 2035066 (D. Idaho 2005) ("Having found Plaintiff failed to request

23    accommodation until after his termination, the employer could not have terminated Wells to

24    avoid participating in the interactive process of accommodation.  Plaintiff has not shown that

25    requesting accommodation after termination, creates a duty on the employer to reasonably

26    ////

8

1   accommodate or supports a finding the termination in this case was in violation of the ADA

2   . . . .").

3              Accordingly, plaintiff's ADA claim must be dismissed with leave to amend.

4   B.      FEHA Claim (against the Regents)

5              Plaintiff's FEHA claim mirrors his ADA claim.  Pursuant to California

6   Government Code section 12940(m), it is unlawful, and separately actionable under FEHA, for

7   an employer to fail to make reasonable accommodation for the known physical or mental

8   disability of an applicant or employee, unless the accommodation would cause undue hardship to

9   the employer.  Raine v. City of Burbank, 135 Cal. App. 4th 1215, 1222-23 (2006) (citing Cal.

10  Govt. Code § 12940(m)); see also King v. United Parcel Service, Inc., 152 Cal. App. 4th at 443.

11  "[T]he position for which an accommodation is required is the employment position the

12  [disabled individual] holds or desires."  Hastings v. Department of Corrections, 110 Cal. App.

13  4th 963, 972 (2003).  The employee has "the burden of giving the employer notice of the

14  disability."  Raine, 135 Cal. App. 4th at 1222.

15             Once notice is given, the employer must take affirmative steps and the parties

16  must engage in an interactive process in order to attempt to fashion a reasonable accommodation.

17  See King, 152 Cal. App. 4th at 443; Gelfo v. Lockheed Martin Corp., 140 Cal. App. 4th 34, 54

18  (2006); Raine, 135 Cal. App. 4th at 1222.  An employer is only required to make a "reasonable

19  accommodation," it is not required "to choose the best accommodation or the specific

20  accommodation a disabled employee or applicant seeks."  Raine, 135 Cal. App. 4th at 1222;

21  Hanson v. Lucky Stores, Inc., 74 Cal. App. 4th 215, 228 (1999).

22             Plaintiff's FEHA claim fails for the same reasons that his ADA claims fail.

23  C.      Title VII Claim (against the Regents)

24      1.      Race & Sex Discrimination

25             Plaintiff presents claims for race and sex discrimination in violation of Title VII.

26  Plaintiff's race discrimination claim is based on allegations that plaintiff, who was hired to

1   replace a white male with ailments similar to plaintiff's, was discriminated against whereas the

2   white male was not.  Plaintiff's sex discrimination claim is vague and not specifically

3   enumerated.  Nonetheless, it appears that plaintiff is accusing various employees of UCDMC of

4   sexually harassing plaintiff in order to have him fired.  See, e.g., SAC at 14, ¶ 43.

5           Generally, exhaustion of administrative remedies is required in order to establish

6   federal subject matter jurisdiction over a Title VII claim.  B.K.B. v. Maui Police Dep't, 276 F.3d

7   1091, 1099 (9th Cir. 2002).  Under Title VII, a plaintiff must exhaust her or his administrative

8   remedies by filing a timely charge with the EEOC, or the appropriate state agency.  See 42

9   U.S.C. § 2000e–5(b).  This serves the important purposes of giving the charged party notice of

10  the claim, affording the agency an opportunity to investigate the charge, and narrowing the

11  issues for prompt adjudication and decision.  Id.

12          Following exhaustion, a federal court's subject matter jurisdiction over Title VII

13  claims "depends upon the scope of the both the EEOC charge and the EEOC investigation."

14  Sosa v. Hiraoka, 920 F.2d 1451, 1456 (9th Cir. 1990).  "Subject matter jurisdiction extends over

15  all allegations of discrimination that either fell within the scope of the EEOC's actual

16  investigation or an EEOC investigation which can reasonably be expected to grow out of the

17  charge of discrimination."  B.K.B., 276 F.3d at 1100 (internal quotation marks and citation

18  omitted).  The court construes the language of EEOC charges "'with utmost liberality since they

19  are made by those unschooled in the technicalities of formal pleading.'"  Id. (citation omitted).

20  Nonetheless, allegations of discrimination are within the court's jurisdiction only if the claims

21  are "like or reasonably related to" the factual allegations contained in the EEOC charge.  Id.

22          The court has examined the EEOC charges and finds no mention of race or sex

23  discrimination, and further finds no factual allegations that are "like or reasonably related to"

24  plaintiff's claim.  Thus, even construing the EEOC charge "with utmost liberality," the court

25  finds that plaintiff has failed to sufficiently allege race or sex discrimination and, as such, he

26  failed to exhaust his administrative remedies as to these claims.  In his opposition, plaintiff states

1  that the EEOC delayed in responding to his claim.  That, however, does not affect the claim

2  itself, which forms the basis of this action and which failed to allege any race or sex

3  discrimination.  Plaintiff's Title VII sex and race discrimination claims must therefore be

4  dismissed with prejudice.  Because the court finds dismissal warranted on this ground, the court

5  declines to address the merits of defendants' argument that plaintiff failed to allege sufficient

6  facts to support his claims of race and sex discrimination.

7          2.      Hostile Work Environment

8          To the extent plaintiff brings suit for hostile work environment due to his race or

9  sex, these claims must be dismissed for the reasons stated.  Insofar as plaintiff argues that he

10  suffered a hostile work environment because of his disability, "Title VII protects persons on the

11  basis of 'race, color, religion, sex, or national origin,' it does not protect persons on the basis of

12  disability." Dotson v. County of Kern, 2011 WL 902142, at *6 (E.D. Cal. Mar. 15, 2011) (citing

13  42 U.S.C. §§ 2000e–2(a)(1), (m); see also Williams v. Holiday Inn, 1996 WL 162992, at *2

14  (N.D. Cal. 1996).  These claims should also be dismissed with prejudice.

15          3.      Age Discrimination

16          Plaintiff also alleges age discrimination under Title VII.  But just like disability,

17  "age . . . is not actionable under Title VII." Leland v. City & County of San Francisco, 576 F.

18  Supp. 2d 1079, 1089 (N.D. Cal. 2008).  In fact, "Congress rejected proposals to address age

19  discrimination in the Civil Rights Act of 1964." Smith v. City of Jackson, 544 U.S. 228, 253

20  (2005).  Instead, the Age Discrimination in Employment Act (the "ADEA") "is the exclusive

21  remedy for age discrimination claims." Nnachi v. City & County of San Francisco, 2010 WL

22  3398545, at *6 (N.D. Cal. Aug.27, 2010); see also Ahlmeyer v. Nevada Sys. of Higher Educ.,

23  555 F.3d 1051, 1057 n.5 (9th Cir. 2009) ("Every circuit to consider the issue has concluded

24  similarly that the ADEA is the exclusive remedy for age discrimination claims by federal

25  employees.").

26          Here, plaintiff has pled age discrimination only under Title VII.  He has not pled a

11

claim under the ADEA.  Therefore, his Title VII age discrimination claim should be dismissed.

Moreover, there are no factual allegations in the SAC supporting any age discrimination claim.

Accordingly, this claim should be dismissed without leave to amend.

D.    Common Law Claims (against the Regents)

The Regents next seek dismissal of plaintiff's common law claims on the ground

that plaintiff is barred from bringing such claims pursuant to California Government Code § 815,

which provides as follows:

> Except as otherwise provided by statute: (a) A public entity is not
> liable for any injury, whether such injury arises out of an act or
> omission of the public entity or a public employee or any other
> person.

Cal. Gov. Code § 815(a).

The Regents is a public entity pursuant to Cal. Gov. Code § 811.2 (providing that

"'Public entity' includes the State, [and] the Regents of the University of California").  As such,

the Regents argue that it is immune from liability arising out of common law tort claims under

California Government Code § 815.

1.    Wrongful Termination

Section 815 applies to claims for wrongful termination in violation of public

policy because the claim is considered a common law tort under California law.  See Palmer v.

Regents of the Univ. of Cal., 107 Cal. App. 4th 899, 911-12 (2003) (holding that claim for

wrongful termination in violation of public policy against the University of California was

barred under § 815(a) because the University is a public entity).  Accordingly, plaintiff's

wrongful termination claim is barred by § 815(a).

Additionally, Cal. Gov't Code § 815.2(a) provides that:

> [a] public entity is liable for injury proximately caused by an act or
> omission of an employee of the public entity within the scope of
> his employment if the act or omission would, apart from this
> section, have given rise to a cause of action against that employee
> or his personal representative.

12

1    This provision does not apply to plaintiff's wrongful termination claim against the Regents

2    because, under California law, individual employees may not be sued for wrongful discharge in

3    violation of public policy.  See Khajavi v. Feather River Anesthesia Med. Group, 84 Cal. App.

4    4th 32, 53 (2003) ("As a matter of law, only an employer can be liable for the tort of wrongful

5    termination in violation of public policy."); Phillips v. Gemini Moving Specialists, 63 Cal. App.

6    4th 563, 576-77 (1998) (reviewing relevant cases and concluding that plaintiff may not sue his

7    employer's paymaster for wrongful discharge, because the tort of wrongful discharge "has its

8    basis in the employer-employee relationship and [the paymaster] was not plaintiff's employer);

9    Jacobs v. Universal Dev. Corp., 53 Cal. App. 4th 692, 704 (1997) ("Only an employer can be

10    liable for tortious discharge, and fellow employees cannot be held accountable for tortious

11    discharge on a conspiracy theory.").

12       Plaintiff's wrongful termination claim accordingly must be dismissed with

13    prejudice.

14      2.    Intentional Infliction of Emotional Distress

15       The basis of plaintiff's claim for intentional infliction of emotional distress

16    ("IIED") is unclear.  Based on the heading of this cause of action, plaintiff appears to bring suit

17    against the Regents for "failure to prevent harassment or discrimination."  See SAC at 20.  This

18    sounds in negligence.  To the extent then that plaintiff is asserting a direct negligence action

19    against the Regents, this claim fails.  See Large v. Regents of University of California, 2012 WL

20    3647455, at *8 n.2 (E.D. Cal. 2012); Cardinal v. Buchnoff, 2010 WL 3609489, at *1-2 (S.D. Cal.

21    2010).

22       However, in the body of this cause of action, plaintiff seeks redress for the

23    allegedly harassing behavior of Meagher and others.  Unlike plaintiff's wrongful termination

24    claim, plaintiff's indirect claim of IIED is not barred by California Government Code § 815

25    because that claim can be brought against individual employees.  See Large, supra, at *8

26    (allowing IIED claim against Regents to proceed based on conduct of employee acting in the

1  course and scope of his employment).  Furthermore, the Regents have not shown that their

2  employees would be immune from this cause of action.  See Cal. Gov. Code § 815.2(b)[3];

3  Robinson v. Solano County, 278 F.3d 1007, 1016 (9th Cir. 2002) (noting that in government tort

4  cases, the rule is liability, immunity is the exception).

5        Because the Regents did not demonstrate that its employees alleged to have

6  engaged in the acts giving rise to this action are immune from liability as a matter of law,

7  plaintiff's IIED claim is not subject to dismissal on this ground.

8  E.     FMLA Claim (against the Regents and Meagher)

9        Finally, defendants seek dismissal of the FMLA claim on grounds of sovereign

10  immunity and failure to state a claim.

11        The FMLA guarantees eligible employees twelve weeks of leave in a one-year

12  period following certain events: a disabling health problem, a family member's serious illness, or

13  the arrival of a new child.  Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 86 (2002)

14  (citing 29 U.S.C. § 2612(a)(1)).  Leave must be granted when medically necessary on an

15  intermittent or part-time basis.  Id. (citing § 2612(b)(1)).  Upon the employee's timely return, the

16  employer must reinstate the employee to his or her former position or an equivalent.  Id. (citing

17  § 2614(a)(1)).

18        To prevail under the FMLA, an employee must prove, as a threshold matter, that

19  the employer interfered with, restrained, or denied "the [employee's] exercise of (or attempts to

20  exercise) any rights provided by the Act."  29 C.F.R. § 825.220(a)(1); see also Ragsdale, 535

21  U.S. at 89.  Even then, the FMLA provides no relief unless the employee has been prejudiced by

22  the violation: the employer is liable only for compensation and benefits lost "by reason of the

23  violation," § 2617(a)(1)(A)(i)(I), for other monetary losses sustained "as a direct result of the

24  ─────────────

25      [3] This section provides, "Except as otherwise provided by statute, a public entity is not
liable for an injury resulting from an act or omission of an employee of the public entity where

26  the employee is immune from liability."

1  violation," § 2617(a)(1)(A)(i)(II), and for "appropriate" equitable relief, including employment,

2  reinstatement, and promotion, § 2617(a)(1) (B).  Ragsdale, 535 U.S. at 89.

3        1.     Sovereign Immunity

4        Defendants first seek dismissal of plaintiff's FMLA claim on grounds of

5  sovereign immunity.

6        "A foundational premise of the federal system is that States, as sovereigns, are

7  immune from suits for damages, save as they elect to waive that defense."  Coleman v. Court of

8  Appeals of Maryland, __ U.S. __, 132 S. Ct. 1327, 1333 (2012) (citing Kimel v. Florida Bd. of

9  Regents, 528 U.S. 62, 72-73 (2000)).  Section Five of the Fourteenth Amendment of the United

10  States Constitution provides an exception that allows Congress to abrogate a State's immunity to

11  enforce the provisions of the Amendment.  See, e.g., Fitzpatrick v. Bitzer, 427 U.S. 445 (1976).

12        As noted, the FMLA provides, in pertinent part, that "an eligible employee shall

13  be entitled to a total of 12 workweeks of leave during any 12–month period . . . [b]ecause of a

14  serious health condition that makes the employee unable to perform the functions of the position

15  of such employee."  29 U.S.C. § 2612(1).  This provision is known as the "self-care provision."

16  It creates a private right of action for equitable relief and damages "against any employer

17  (including a public agency) in any Federal or State court" for violations of the self-care

18  provision, amongst others.  See 29 U .S.C. § 2617(a)(2).  As used in that statute, a public agency

19  includes "the government of a State or political subdivision of a State; or an agency of the

20  United States, a State, or a political subdivision of a State."  29 C.F.R. § 825.108.

21        The United States Supreme Court recently ruled that the FMLA's self-care

22  provision did not fall within the Fourteenth Amendment exception to Eleventh Amendment

23  immunity.  Coleman, 132 S. Ct. at 1337 ("To abrogate the States' immunity from suits for

24  damages under § 5, Congress must identify a pattern of constitutional violations and tailor a

25  remedy congruent and proportional to the documented violations.  It failed to do so when it

26  allowed employees to sue States for violations of the FMLA's self-care provision.").  As such,

1    states are immune from suit under the self-care provision of the FMLA.

2    　　　　　Further, Eleventh Amendment immunity extends to agencies of the state.

3    Mitchell v. Los Angeles Cmty. Coll. Dist., 861 F.2d 198, 201 (9th Cir. 1988).  The Regents is

4    entitled to Eleventh Amendment immunity because a California college district is considered a

5    state agency.  See id.  Accordingly, plaintiff's FMLA claim against the Regents must be

6    dismissed without leave to amend.

7    　　　　　Defendants also argue that Meagher is able to claim sovereign immunity because

8    "there is no question that [the Regents] is the real party in interest to the FMLA claim."  Defs.'

9    Mot. to Dismiss at 10; Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 101-02

10   (1984).  Contrary to defendants' assertion, it is unclear who the real party in interest is in an

11   FMLA claim.  As this court has recognized, there is a split in authority on the question of an

12   individual public employee's FMLA liability.  See  Bonzani v. Shinseki, 895 F. Supp. 2d 1003,

13   1007 (E.D. Cal. 2012) (collecting cases).

14   　　　　　Therefore, plaintiff's FMLA claim against Meagher is not subject to dismissal on

15   this ground.

16   　　　2.    Failure to State a Claim

17   　　　　　Notwithstanding the foregoing, the court finds that plaintiff's FMLA claim is

18   subject to dismissal for failure to state a claim.  Simply put, plaintiff FMLA allegations are

19   unclear.  Liability under the FMLA is predicated on an alleged denial of medical leave, but

20   plaintiff admits in the SAC that he was granted a two-week leave of absence on June 23, 2009,

21   and that he requested a second leave of absence on July 17, 2009.  The motion should therefore

22   be granted.  At the hearing on defendants' motion, plaintiff stated he was denied medical leave

23   following his second request.  Thus, this claim should be dismissed with leave to amend.

24   　　　　　Based on the foregoing, IT IS HEREBY RECOMMENDED that:

25   　　　1.    Defendants' motion to dismiss be granted;

26   　　　2.    The following claims be dismissed without leave to amend: Title VII, wrongful

1    termination, FMLA as to the Regents; and

2        3.       Plaintiff be granted leave to amend the remaining claims.

3                These findings and recommendations are submitted to the United States District

4    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

5    days after being served with these findings and recommendations, any party may file written

6    objections with the court and serve a copy on all parties.  Such a document should be captioned

7    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

8    shall be served and filed within seven days after service of the objections.  The parties are

9    advised that failure to file objections within the specified time may waive the right to appeal the

10   District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

11   DATED: May 6, 2013.

12

13                                          ALLISON CLAIRE
                                            UNITED STATES MAGISTRATE JUDGE
14

15
     /mb;bell1864.mtd
16

17

18

19

20

21

22

23

24

25

26